IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-01280-WYD-BNB

JACK J. GRYNBERG,
GRYNBERG PRODUCTION CORPORATION and its successors, and
GRYNBERG PETROLEUM COMPANY and its successors,

Plaintiffs,

v.

TOTAL COMPAGNIE FRANCAISE DES PETROLES,
TOTAL FINA ELF S.A., and
TOTAL S.A.,

Defendants.
_____

**ORDER**
_____

This matter is before me on the **Defendants' Motion to Compel Production of Documents Responsive to Second and Third Requests for Production** (the "Motion"), filed May 20, 2005.  The Motion is GRANTED as specified below.

At issue here are documents containing communications between the plaintiffs ("Grynberg") and three of their lawyers--David G. Ebner; Phillipe Auzas; and Ronald C. Minkoff. It does not appear to be disputed that ordinarily these documents would not be discoverable based on the attorney-client privilege and/or work product immunity.  The thrust of the dispute is whether those privileges have been waived as a result of the Affidavit of Plaintiff Jack J. Grynberg in Support of Plaintiffs' Additional Materials in Connection with Defendants' Motion for Summary Judgment Based on Statutory Tolling of Limitations Under C.R.S. 13-80-118, dated March 19, 2004, and filed with the court on March 24, 2004 (the "Grynberg Aff.").

In connection with arguments opposing summary judgment based on a statute of limitations defense, the plaintiffs submitted the Grynberg Aff., which states in relevant part:

> Attached hereto and incorporated herein for all purposes as Exhibit A to the affidavit is a true copy of a legal opinion dated July 13, 2001, faxed to me from one of my attorneys, David G. Ebner. This opinion is a privileged communication between me and my attorney containing legal advice to me from Mr. Ebner, and is presented as Exhibit A with redactions. I do not intend to waive my claim of attorney-client privilege with respect to any other communications with Mr. Ebner, nor do I intend to waive my claim of attorney client privilege as to the redacted portions of Exhibit A.
>
> Mr. Ebner has represented me in various matters continuously for twenty eight (28) years. As Exhibit A shows, I had requested his research and his opinion concerning a basis for this present lawsuit against the defendants (Total). Exhibit A is his negative reply to that request, based upon his research, as well as upon his long familiarity with other litigation to which I was a party that involved companies other than Total. That litigation involved the determination of ownership of oil and natural gas production rights in the Area of Mutual Interest (AMI) in Kazakhstan . . ., just like this present action against Total.
>
> I believed Mr. Ebner's negative opinion given in Exhibit A, I relied upon it, and consequently did not file this suit against Total at that time, because his opinion confirmed that I did not have the material facts to file this suit.

Grynberg Aff., ¶¶1-3.

The disputed requests for production seek the following:

> **Request for Production No. 1 [Second Set]:** A complete, unredacted copy of the letter dated July 13, 2001, from David G. Ebner to Jack J. Grynberg, regarding Total and plaintiffs' knowledge of facts related to this case, part of which is attached to the "Affidavit of Plaintiff Jack J. Grynberg in Support of Plaintiffs' additional Materials in Connection with Defendants' Motion for Summary Judgment Based on Statutory Tolling of Limitations Under C.R.S. 13-80-118" filed with the Court in this case on or about March 22, 2004, along with any fax cover sheets or

enclosures related to this letter.

**Response:**  Objection. This request seeks information protected from discovery under the work product and attorney-client communications privileges.

**Request for Production No. 1 [Third Set]:**  All correspondence, memoranda, notes, and any other Document pertaining to communications between Jack J. Grynberg or any plaintiff in this case and David G. Ebner or his law firm related to this present lawsuit against the defendants (Total).

**Response:**  Objection.  This request seeks information protected from discovery under the work product and/or attorney-client communications privilege.  See Plaintiffs' privilege log, documents bates numbered GVT 9761, and GVT 11212-GVT 11213.

**Request for Production No. 2 [Third Set]:**   All correspondence, and any Documents pertaining to the substance of communications, between David G. Ebner (and/or his law firm) and Jack J. Grynberg (and/or any plaintiff in this case) related to "this present lawsuit against the defendants (Total)," as mentioned in paragraph 2 of the affidavit of Jack J. Grynberg filed among the pleadings in this case dated March 19, 2004.

**Response:**  Objection.  This request seeks information protected from discovery under the work product and/or attorney-client communications privilege.  See Plaintiffs' privilege log, documents bates numbered GVT 9761, and GVT 11212-GVT 11213.

**Request for Production No. 3 [Third Set]:**   All memoranda, notes, research materials, research results, and any other Documents related to the research and opinions (including, without limitation, the materials and facts researched) of David G. Ebner and his law firm concerning "a basis for this present lawsuit against the defendants (Total)" as mentioned in paragraph 2 of the affidavit of Jack J. Grynberg filed among the pleadings in this case and dated march 19, 2004, and as mentioned in Exhibit A to this affidavit (David Ebner's letter to Jack J. Grynberg dated July 13, 2001).

> **Response:**   Objection.  This request seeks information protected
> from discovery under the work product and/or attorney-client
> communications privilege.  See Plaintiffs' privilege log, documents
> bates numbered GVT 9761, and GVT 11212-GVT 11213.
>
> **Request for Production No. 6 [Third Set]:**   All Documents
> showing or related to the efforts of plaintiffs, and the results of
> these efforts, to investigate or learn about the nature, location, and
> extent of Total's involvement in te "Kazakhstan AMI" and about
> Total's alleged use of plaintiffs' confidential information pertaining
> to the "Kazakhstan AMI," including, without limitation, plaintiffs'
> correspondence, and any form or record of communications, on this
> subject with the following persons or entities: . . . Phillipe Auzas
> (see Grynberg's March 19, 2004, Affidavit 6(I)); Ronald C.
> Minkoff (see Grynberg's March 19, 2004, Affidavit 6(j)).
>
> For purposes of this request for production, "Kazakhstan AMI"
> refers to the AMI described in plaintiffs' First Amended Complaint
> and in the affidavit of Jack J. Grynberg filed among the pleadings in
> this case and dated march 19, 2004 (referred to above as
> "Grynberg's March 19, 2004, Affidavit").
>
> **Response:**   Plaintiffs object to this request to the extent that it
> requires them to produce communications between Plaintiffs and
> Phillipe Auzas and Ronald C. Minkoff, which are protected from
> discovery under the work product and/or attorney-client
> communications privileges.  Plaintiffs may rely at their option upon
> documents presently claimed as privileged and identified on the
> privilege log previously submitted to Total. . . .

Motion to Compel, at nn.4, 5, and 6.

Jurisdiction in this action is based on diversity of citizenship.  Final Pretrial Order, entered October 13, 2005, at Part 2, p.2.  Consequently, state law supplies the rule of decision on attorney-client privilege issues.  Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699(10th Cir. 1998).  By contrast, the work product privilege is governed, even in diversity cases, by the uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).  Id. at 702 n.10.

The attorney-client privilege in Colorado is codified at section 13-90-107(1)(b), C.R.S., as

follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

In general, the purpose of the attorney-client privilege is to encourage "full and frank communications between attorneys and their clients. . . ." People v. Swearingen, 649 P.2d 1102, 1104 (Colo. 1982). In addition, however:

> [T]he attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

People v. Sickich, 935 P.2d 70, 73 (Colo. App. 1996).

The parties have not directed me to any Colorado Supreme Court decisions concerning the waiver of the attorney-client privilege in the context of the advice of counsel defense, as is at issue here. The Tenth Circuit Court of Appeals, the courts of this district, and federal courts in general have addressed the issue on a number of occasions.

In the Frontier Refining case, the circuit court recognized that "reliance upon a defense of advice of counsel has, in some circumstances, been held to constitute a waiver of the attorney-client privilege." 136 F.3d at 700. Such a waiver may be found to have occurred under the following circumstances:

> The attorney client privilege may also be implicitly waived, and one way that is done is by raising attorney advice as a defense. During his opening statement and his questioning [of the defendant's one-time attorney] Levad, Workman's trial counsel placed Levad's advice in issue by asserting that Workman had relied on the advice in cashing the checks. Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with Levad for his own benefit. The attorney client privilege cannot be used as both a shield and a sword, and Workman cannot claim in his defense that he relied on Levad's advice without permitting the prosecution to explore the substance of that advice.

United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998)(internal citations omitted). Accord FDIC v. Wise, 139 F.R.D. 168, 172 (D. Colo. 1991)(holding that the FDIC had waived asserted privileges, including the attorney-client privilege, by repeatedly injecting into the case the actions, knowledge, and beliefs of its bank regulators, and stating: "[W]e are persuaded that defendants' ability to test these allegations by reviewing the regulatory documents is vital to their defense. Since the FDIC affirmatively placed this information at issue, allowing it to assert privileges to protect against disclosure of these documents would be manifestly unfair to defendants").

Similarly, in Sedillos v. Board of Education, 313 F. Supp. 1091, 1093 (D. Colo. 2004), I held that a party cannot on the one hand claim as a defense reliance on the advice of counsel and waive the attorney-client privilege in connection with some materials supportive of that defense and at the same time invoke the attorney-client privilege to prevent the opposition from exploring fully the substance and circumstances of the advice allegedly relied on. "A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." Id. at 1094 (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.

1991)). Thus, "[w]here a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 413 (D. Del. 1992).

Grynberg's decision to place the advice of their counsel in issue in this case is an affirmative act which has resulted in a waiver of the attorney-client privilege with respect to the subject matter of that advice. It would be fundamentally unfair now to limit Total's inquiry into all aspects of that advice, which is vital to its statute of limitations defense. "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." United States v. Collie, 128 F.3d 313, 320 (6th Cir. 1997).

Grynberg has relied on and disclosed a redacted version of a letter from their counsel, David Ebner, addressing the issue of what Mr. Grynberg knew and when, which is relevant to Total's statute of limitations defense. Any claim of attorney-client privilege with respect to this letter, and to any communications between Grynberg and Mr. Ebner and/or is law firm related to Total's involvement with oil and natural gas exploration, development and production in Kazakhstan, and information about Total's involvement in signing a contract for oil and natural gas exploration, development and production in Kazakhstan, including specifically information on Total's involvement in the Kazakhstan AMI, has been waived by Mr. Grynberg's affidavit and Grynberg's reliance on the advice of their counsel. Grynberg admits that they had the knowledge necessary to assert their claims against Total as of January 29, 2002. Consequently, Total is entitled to discovery of communications between Grynberg and Mr. Ebner and his law firm only to that date, and not thereafter.

Mr. Grynberg also alleges in his affidavit the following:

> I was in regular contact with my French attorney Phillipe Auzas of Paris, France, presently with Grand, Auzas & Associes, 6, rue Paul Valery, 75116, Paris, France, who was unable to provide me with any information about Total's involvement with oil and natural gas exploration, development and production in Kazakhstan, or any information about Total's involvement in signing a contract for the same with Kazakhstan.
>
> In addition . . ., I was also in regular contact with Ronald C. Minkoff, attorney, presently with Frankfurt Kurnit Klein & Selz, P.C., 488 Madison Ave., New York, N.Y. 10022. Mr. Minkoff was involved as my attorney in other litigation, including the "BPX" case referred to by Total in its Motions to Dismiss and Motion for Summary Judgment in this case. Mr. Minkoff could not get for me any specific information on Total's involvement in the Kazakhstan AMI, even though he assisted me in preparing Exhibit 1-B to Total's Reply filed herein March 16, 2004.

Grynberg Aff., ¶¶6(I)-6(j).

Mr. Grynberg's statements in his affidavit also put at issue his communications with Messrs. Auzas and Minkoff regarding information about Total's involvement with oil and natural gas exploration, development and production in Kazakhstan, and information about Total's involvement in signing a contract for oil and natural gas exploration, development and production in Kazakhstan, including specifically information on Total's involvement in the Kazakhstan AMI. Total's discovery requests, though more sweepingly phrased, also seek this information. I find that Grynberg also has waived any claim of attorney-client privilege with respect to this information. Discovery of Grynberg's communications with Messrs. Auzas and Minkoff also is limited to the period of time prior to January 29, 2002, the date Grynberg admits to obtaining the information needed to proceed against Total.

The work product immunity derives from the provisions of Rule 26(b)(3), Fed. R. Civ. P., which provide in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

See American Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc., 97 F.R.D. 515, 516 n.1 (D. Colo. 1983)(noting that Rule 26(b)(3) codifies the work product doctrine recognized in Hickman v. Taylor, 329 U.S. 495 (1947)).

In this case, Total seeks production of the mental impressions, conclusions, opinions, and legal theories of Grynberg's lawyers, termed "opinion work product," as distinguished from "fact work product." Frontier Refining, 136 F.3d at 704 n.12. Disclosure of an attorney's opinion work product, as is sought here, may be ordered only upon a far stronger showing of necessity and unavailability by other means. Axler v. Scientific Ecology Group, Inc., 196 F.R.D. 210, 213 (D. Mass. 2000)(quoting Upjohn Co. v. United States, 449 U.S. 383, 401-02 (1981)). See Frontier Refining, 136 F.3d at 704 n.12 (indicating that the standard to be applied when ordering the disclosure of opinion work product has been described variously as "when mental impressions are at issue and need for material is compelling," and upon a showing of "extraordinary justification").

As in the case of the attorney-client privilege, "a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point

9

but then invoking the privilege to prevent an opponent from challenging the assertion." <u>Frontier Refining</u>,136 F.3d at 704.  Grynberg's statement in its objection to production request number 6 that "[p]laintiffs may rely at their option upon documents presently claimed as privileged and identified on the privilege log previously submitted to Total," makes clear that Grynberg is engaged in precisely the sword and shield misconduct prohibited by the circuit court in the <u>Frontier Refining</u> case.

      In this case, the mental impressions of Grynberg's lawyers are directly at issue. Mr. Grynberg in his affidavit states under oath that his lawyers concluded prior to January 2002 that no claim could be brought against Total.  Fairness dictates that Total be allowed fully to explore the basis of that conclusion.  Total's need for the information is compelling, in view of Grynberg's reliance on the advice of his counsel in response to Total's statute of limitations defense.  The information certainly is not available elsewhere.  Grynberg repeatedly asserts that the information is subject to the attorney-client privilege; in order to be privileged, the information could not have been disclosed beyond the clients, their attorneys, and their agents.  In view of the position taken by Grynberg--that Total's statute of limitations defense may be rebutted based on the advice of his counsel, but that the advice relied on is subject to the work product immunity unless Grynberg chooses to disclose it in support of his position--I find that an extraordinary justification exists to compel the production of the information sought by Total to test Grynberg's advice of counsel assertion.

      An issue arose at the hearing on the Motion as to whether Grynberg is required to produce documents in the possession of Messrs. Ebner, Auzas, and Minkoff and their law firms but not in the possession of Grynberg.  The matter was not argued in the parties' written

submissions, and has not been briefed. I am particularly troubled by Total's assertion that Grynberg must produce documents in the possession of its lawyers with respect to Mr. Auzas, a French lawyer performing services for Grynberg in Paris. I note the general rule, however, applicable with respect to lawyers in the United States, that a party is "deemed to have control over documents held on its behalf by [its] attorneys," Lone Star Steakhouse and Saloon, Inc. v. Liberty Mutual Ins. Group, 2003 WL 21659662 (D. Kan. June 4, 2003), and that a party "can be required to produce a document that it has turned over to its attorney." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §2210 at pp.397-98. See In re Rupert, 309 F.2d 97, 98 (6th Cir. 1962).

IT IS ORDERED that the Motion is GRANTED. The defendants shall produce for inspection and copying by Total, on or before **November 1, 2005**, all documents in their possession, custody, or control which meet the following criteria:

(1) An unredacted copy of the letter dated July 13, 2001, from David G. Ebner to Jack J. Grynberg (the "July 13 Letter"), a redacted copy of which was attached to the Grynberg Affidavit, together with any fax cover sheets or enclosures related to the letter;

(2) All memoranda, notes, research materials, research results, and other documents related to the research underlying the July 13 Letter; and

(3) All documents constituting or concerning communications occurring on or before January 29, 2002, between plaintiffs and any of David G. Ebner and/ or his law firm, Phillipe Auzas, and Ronald C. Minkoff regarding information about Total's involvement with oil and natural gas exploration, development and production in Kazakhstan, and information about Total's involvement in signing a contract for oil and natural gas exploration, development and

production in Kazakhstan, including specifically information on Total's involvement in the Kazakhstan AMI.

Dated October 18, 2005.

                                      BY THE COURT:

                                      /s/ Boyd N. Boland
                                      United States Magistrate Judge