IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-01280-WYD-BNB

JACK J. GRYNBERG,
GRYNBERG PRODUCTION CORPORATION and its successors, and
GRYNBERG PETROLEUM COMPANY and its successors,

Plaintiffs,

v.

TOTAL S.A.,

Defendants.

_____

## ORDER

_____

This matter is before me on the following motions:

(1)      **Defendant's Motion for Protective Order** [Doc. # 278, filed 1/13/06]; and

(2)      **Plaintiffs' Amended Motion to Modify the Protective Order** [Doc. # 307, filed

3/2/06] (the "Plaintiffs' Motion to Modify").

Each of the motions seeks an order concerning documents produced  by Total through

discovery in this case.  For the reasons stated below, the Defendant's Motion for Protective Order

is GRANTED and the Plaintiff's Motion to Modify is DENIED.

## I.      BACKGROUND

This case involves claims by the Grynberg plaintiffs and against Total for unjust

enrichment, conversion, fraud, and related causes of action based on the the plaintiffs' alleged

assistance to Total in securing an interest in oil fields of potentially extraordinary value located in

the Republic of Kazakhstan.  According to Total:

Total, directly and through its wholly-owned subsidiary . . . has thus far invested over 11 years and in excess of $1 billion in obtaining and developing its interests in the North Caspian Sea area of Kazakhstan. . . .  These efforts have involved not only years of negotiations with the Government of Kazakhstan and its state enterprises, and with the other members of the North Caspian Sea Consortium, but also includes huge investment in technical study and a massive exploration program to determine whether recoverable oil and gas exists in the exploration area.

*    *    *

Importantly, Total is not alone in its Kazakhstan project.  The North Caspian Sea Consortium consists of seven international petroleum companies. . . .The current parties to the Production Sharing Agreement in Respect of the North Caspian Sea . . . are those seven companies, the Kazakh state enterprise Kazmunaigaz, and the Republic of Kazakhstan itself. . . .  As of December 31, 2003, the Consortium had spent approximately $3.2 billion on the venture, with over $700 million of that on preliminary development costs. . . .

The members of the North Caspian Sea Consortium and the parties to related agreements owe mutual duties of confidentiality between and among themselves. . . .  In particular, they owe explicit duties of confidentiality to the Republic of Kazakhstan to protect and preserve its confidential information regarding its vital national assets.

*Defendant's Motion to Quash Deposition Notices and for Protective Order Under FRCP 26(c)*

[Doc. # 54, filed 4/29/04], at pp.4, 6.

On October 25, 2004, I entered the *Agreed Protective Order* [Doc. # 119, filed 10/25/04]

(the "Protective Order"), which is a blanket protective order, consistent with the requirements of

Gillard v. Boulder Valley School Dist., 196 F.R.D. 382 (D. Colo. 2000).  The Agreed Protective

Order is designed to allow the free discovery of information between the parties for the

preparation and trial of this case while restricting the general dissemination of the information

exchanged in discovery which the parties deem to be confidential.  Id. at 385-86.  Blanket

protective orders, like the one entered here, work as follows:

> Blanket protective orders place upon the parties themselves . . . the initial burden of determining what information is entitled to protection.  Normally, a blanket protective order requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is entitled to protection.  The designated information is thereafter entitled to the protections afforded by the blanket protective order unless the designation is objected to by an opposing party.  Judicial review of a party's designation as confidential occurs only when there is such an objection which the parties cannot resolve by agreement.
>
> \*   \*   \*
>
> Blanket protective orders serve the interests of a just, speedy, and less expensive determination of complex disputes by alleviating the need for and delay occasioned by extensive and repeated judicial intervention.  In view of increasingly complex cases and the existing workload of the trial courts, blanket protective orders are essential to the functioning of civil discovery.  Absent such orders, discovery would come to a virtual standstill.

Id. at 386 (internal quotations and citations omitted).

The Agreed Protective Order applies "to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure."  Agreed Protective Order at ¶1.  The Agreed Protective Order allows parties to designate materials as containing "Confidential Information," and with respect to that information the Agreed Protective Order provides:

> All Confidential Information produced or exchanged in the course of this lawsuit *shall be used solely for the purpose of preparation and trial of this case*, and shall not be used for any business, commercial, competitive, or any other purposes whatsoever, and

3

> shall not be disclosed to any person except in accordance with the
> terms hereof.

Id. at ¶3 (emphasis added).  Confidential Information may be disclosed only to a limited and carefully defined group of "Qualified Persons," all of whom play some role in this litigation.  Id. at ¶6.

Total disclosed information in discovery which it designated as "Confidential Information" pursuant to the Agreed Protective Order.

## II.    THE DISPUTED MATERIALS

The two motions differ in one important respect.  The Defendant's Motion for Protective Order concerns materials about which the Grynberg plaintiffs dispute the legitimacy of Total's designation as confidential.  The Plaintiff's Motion to Modify, by contrast, concerns documents which the Grynberg plaintiffs acknowledge are confidential.

### 1.    Defendant's Motion for Protective Order

The Grynberg plaintiffs objected to Total's designation as confidential the information contained in approximately 245 documents and certain deposition testimony (the "Challenged Materials"), claiming that the Challenged Materials do not contain trade secrets and should not be subject to the limitations on disclosure established in the Agreed Protective Order.  Apparently the Grynberg plaintiffs seek to have the ability freely to disclose the Challenged Materials generally to the public.

The Grynberg plaintiffs' objection to Total's designation of the Challenged Materials as confidential triggered the procedure contained in paragraph 12 of the Agreed Protective Order, which provides:

A party may object to the designation of particular
CONFIDENTIAL information by giving written notice to the party
designating the disputed information.  The written notice shall
identify the information to which the objection is made.  If the
parties cannot resolve the objection within thirty (30) business days
after the time the notice is received, it shall be the obligation of the
party designating the information as CONFIDENTIAL to file an
appropriate motion requesting that the Court determine whether the
disputed information should be subject to the terms of this
Protective Order.  If such a motion is filed, the disputed information
shall be treated as CONFIDENTIAL under the terms of this
Protective Order until the Court rules on the motion.  In connection
with a motion filed under this provision, the party designating the
information as CONFIDENTIAL shall bear the burden of
establishing that good cause exists for the disputed information to
be treated as CONFIDENTIAL.

Agreed Protective Order, at ¶12.

In response to the Grynberg plaintiffs' objection to the designation of the challenged

materials as confidential, Total filed its Motion for Protective Order requesting that I enter a

particular protective order[1] as follows:

[R]estricting plaintiffs' use of the [challenged] discovery documents
. . . and deposition transcripts . . . to purposes of preparation and
trial of this lawsuit only, prohibiting plaintiffs from using,
disclosing, or disseminating these documents or depositions outside
the confines of this lawsuit for purposes of plaintiffs' personal gain
or aggrandizement or for any other purpose. . . .

Defendant's Motion for Protective Order at pp.10-11.

Total claims that a protective order is necessary to prevent the Grynberg plaintiffs from

disclosing the Challenged Materials because:

Total is very concerned that plaintiffs may misuse these discovery
documents in the following ways: (1) by publishing them along with

---

[1]A particular protective order is a protective order that covers specific, identified
information.  See Gillard, 196 F.R.D. at 385-86.

5

erroneous arguments or distorted statements in a fashion intended to embarrass, annoy, oppress, discredit, or harass Total; (2) by using them as evidence in other disputes with other parties, such as an arbitration currently pending in New York between Grynberg and British Petroleum or an arbitration in Canada between Grynberg and British Gas, or perhaps in the separate lawsuit Grynberg is pursuing against Shell, Cause No. 03-B-1212 in the U.S. District Court for the District of Colorado; (3) perhaps by publishing the documents to government officials or other persons in the Republic of Kazakhstan or to other members of the Kazakhstan Caspian Sea Consortium; or (4) publishing Total's materials in an unfair light or with malevolent gloss. The Grynberg plaintiffs could attempt to cause substantial harm to Total by disseminating Total's documents in places or ways unknown to Total and with no opportunity to monitor or respond to plaintiffs' allegations.

Defendant's Motion for Protective Order at pp.2-3.

## 2.    Plaintiffs' Motion to Modify

The Grynberg plaintiffs have a related litigation against Shell Exploration, B.V., pending in this court[2] which apparently also involves the Kazakhstan oil fields and another member of the North Caspian Sea Consortium. The Grynberg plaintiffs seek an order modifying the Agreed Protective Order to allow "use of certain 'confidential' documents produced in this case in the related *Shell* litigation." Plaintiffs' Motion to Modify, at ¶1.

The Grynberg plaintiffs have engaged the same economist, Daniel Johnston, in both this action and the <u>Shell</u> case to calculate the net present value of each respective defendant's interest in the Kazakhstan oil fields. Motion to Modify, at ¶7. As a result, the Grynberg plaintiffs claim a "substantial need" to use the confidential Total documents in the <u>Shell</u> litigation because:

---

[2]The related case is <u>Grynberg v. Shell Exploration, B.V.</u>, 03-cv-01212-LTB-PAC.

6

Shell's interest in the Kashagan Consortium and its proportionate share of the expenses are identical to Total's share in the Consortium. . . .  As such, Mr. Johnston's opinion in *Shell* is virtually identical to his opinion in *Total*.  Notwithstanding the simplicity of the situation, these *Shell* and *Total* defendants have attempted to block Mr. Johnston's effective testimony.  The *Shell* defendants have complained that they cannot effectively cross-examine Mr. Johnston because they do not have certain *Total* documents Mr. Johnston looked at before he prepared his Total opinion.  Plaintiffs' counsel has pointed out to Shell's attorneys that the only significant Total documents are the Consortium Joint Interest Billing Statements and Shell must have these statements because they were provided to all consortium members.  To date, Shell has failed to produce these Consortium Joint Billing Statements.

*     *     *

Another example concerns Total documents which bear relevance to Shell's actions.  These documents which Total has produced, but Shell claims it does not have.

*     *     *

What is happening here is not legitimate actions designed to protect the improper disclosure of trade secrets--these materials are not trade secrets as between Shell and Total.  Rather, it is clear Total is attempting to impede Plaintiffs' litigation efforts.

Plaintiffs' Motion to Modify, at ¶¶10-12.[3]

---

[3]I have to question the propriety of Mr. Johnston's use of Total's confidential information in connection with the preparation of his expert report in the <u>Shell</u> case.  As Total argues:

. . .[P]laintiffs' Motion prove[s] that the plaintiffs improperly used and disclosed Total's Confidential Information in the Grynberg plaintiffs' case against Shell.  Exhibit 9 is a copy of a letter dated January 23, 2006, from Shell's attorney to plaintiffs' counsel, Mr. Porter, pointing out that plaintiffs' designated expert witness in the Shell case used and relied upon Total's confidential documents in forming his opinions and writing his report in the Shell case.

The [Approved Protective Order] prohibits precisely this kind of dissemination.  It says "the parties hereto and their Qualified Persons are not permitted to produce or reveal any information designated CONFIDENTIAL in discovery in any other case."  APO ¶20.  These documents prove that plaintiffs and their Qualified

## III.   ANALYSIS

This is not a discovery dispute.  To the contrary, Total has produced all of the Challenged

Materials to the Grynberg plaintiffs, and the Grynberg plaintiffs are free to use those materials in

this litigation, subject to the limitations of relevancy, authenticity, and the like.  The issue here is

the ability of the Grynberg plaintiffs to disseminate the Challenged Materials, obtained through

discovery here under the protections of the Agreed Protective Order, to the public or in other,

collateral litigation.

My determination of the pending motions is guided by the Supreme Court's decision in

Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), where the court discussed, among other

things, the authority of a district court to regulate the use of sensitive information obtained

through liberal discovery in a pending civil action:

> Rule 26(b)(1) provides that a party may obtain discovery regarding
> any matter, not privileged, which is relevant to the subject matter
> involved in the pending action. . . .  [D]iscovery is not limited to
> matters that will be admissible at trial so long as the information
> sought appears reasonably calculated to lead to the discovery of
> admissible evidence.
>                              *     *     *
> The Rules do not differentiate between information that is private
> or intimate and that to which no privacy interests attach.  Under the
> Rules, the only express limitations are that the information sought is
> not privileged, and is relevant to the subject matter of the pending
> action.  Thus, the Rules often allow extensive intrusion into the
> affairs of both litigants and third parties.
>                              *     *     *

---

Person have already used and improperly disclosed Total's
Confidential Information in their Shall case.

Defendant's Response to Plaintiffs' Amended Motion to Modify the Protective Order [Doc. #
318, filed 3/22/06] ("Defendant's Response), at pp.2-3.

The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used.

\* \* \*

As in all civil litigation, [the parties] gained information they wish to disseminate only by virtue of the trial court's discovery processes.

\* \* \*

Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

\* \* \*

Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

\* \* \*

There is an opportunity, therefore, for litigants to obtain-- incidentally or purposefully--information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. . . . The prevention of the abuse that can attend the coerced production of information under [the] discovery rule[s] is sufficient justification for the authorization of protective orders.

Id., pp.29-36 (internal citations, quotations, and notes omitted).

Thus, to protect against the improper use of sensitive information disclosed pursuant to the liberal discovery procedures, Rule 26(c) allows a court upon a showing of good cause and as justice may require to enter a protective order to protect a party from annoyance, embarrassment,

or oppression.  See Jennings v. Peters, 162 F.R.D. 120, 122 (N.D. Ill. 1995); accord Gillard, 196 F.R.D. at 387 (noting that discovery is designed to allow parties to obtain information for the purpose of preparing and trying a specific lawsuit, and that a party does not necessarily have the right to make unrestricted use of information obtained through civil discovery).  Among other things, a protective order may be entered requiring that commercial information not be disclosed in discovery or be disclosed only in a designated way.  Fed. R. Civ. P. 26(c)(7).  The burden is on the party requesting a protective order to demonstrate that the entry of a protective order is necessary.  See Centurion Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323, 325 (10th Cir. 1981).

I am persuaded that the documents and other materials at issue here include Total's internal memoranda, employee notes, private business correspondence, and draft contracts related to its business dealings in Kazakhstan.  They contain sensitive commercial information about a particularly complex international business relationship which involves numerous international corporations and a foreign sovereign.  The potential value of the transaction is enormous, and the risk of harm to Total from possible improper disclosure of the sensitive information is equally enormous.  As the court noted in Zenith Radio Corp. v. Matsushita Electric Industrial Co., 529 F. Supp. 866, 891 (E.D. Pa. 1981), "the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts.  The court's common sense is a helpful guide."

I also am extremely concerned about allowing a party to obtain sensitive business information in one case under the protections of a carefully negotiated, restrictive blanket

protective order, who then attempt to bootstrap that information into other lawsuits, arbitrations,

and settings.  I agree with Total that it had a right to rely on the Agreed Protective Order:

> Total produced these confidential materials under the APO [Agreed
> Protective Order] protections, believing that its Confidential
> Information would not be displayed to other consortium members
> or to the public.  Revealing this information as plaintiffs request
> would embarrass and annoy Total because Total believed that use
> of its confidential consortium related expense data, confidential
> contracts, Total's internal evaluation of consortium expense data,
> and reserve and valuation estimates would be contained in this case
> only.  If that information turns up in the hands of a third party in a
> separate case against a different consortium member, Total's
> reliance on the APO will be eviscerated.

Defendant's Response, at p.5.

I cannot gauge how Total would have responded in a different setting to a demand to

produce these sensitive materials.  Total's motivation to resist such production might be

dramatically increased, and the need for protection might be greater, in a different setting and

depending on the identity of the parties to whom Confidential Information might be revealed.

The Grynberg plaintiffs cite United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424

(10th Cir. 1990), for the proposition that I must modify the Agreed Protective Order and allow

the Grynberg plaintiffs to use in other litigation the information discovered from Total here unless

Total can demonstrate that the modification would "tangibly prejudice" Total's "substantial

rights."  Id. at 1428.  I disagree, and note that the United Nuclear case is readily distinguishable.

In United Nuclear, non-parties sought to intervene in an action to modify an existing protective

order.  The Grynberg plaintiffs are not non-parties, of course.  In addition, the Grynberg plaintiffs

are parties in the collateral proceedings where Total fears its Confidential Information may be

misused; Total is not.  Under these facts, the limitation imposed by the circuit court in United

Nuclear applies:

> [T]he district court must refrain from issuing discovery orders applicable only to collateral litigation. Federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . . and a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation. While the district court here properly granted collateral litigants access to discovery under its protective order, questions of the discoverability in the collateral litigation of the materials discovered in this litigation are, of course, for the collateral courts.

United Nuclear, 905 F.2d at 1428 (internal quotations and citations omitted).

The Grynberg plaintiffs are parties in the Shell litigation and other related matters. I am unaware of what discovery limitations, if any, might exist in that case. The better approach, particularly in view of the sensitivity of the disputed materials and enormous potential for harm to Total which could result from misuse of Total's confidential materials, is to require the Grynberg plaintiffs to seek by subpoena in the Shell litigation any materials they believe may be relevant there. Total, Shell, and any other interested party would then be in a position to assert their positions with full knowledge of the context of the dispute. For example, Shell is not a party to this action, and I do not have the benefit of its views on the requested modification to the Agreed Protective Order. If the Grynberg plaintiffs subpoenaed in the Shell litigation the Total confidential materials they seek in connection with that case, all three potentially interested parties--Total, the Grynberg plaintiffs, and Shell--would be present to present their positions on the propriety of the disclosure and use of the materials.

**IV.     CONCLUSION**

IT IS ORDERED that the Defendant's Motion for Protective Order is GRANTED.  The

disputed materials designated by Total as Confidential Information shall be used solely for the

purpose of preparation and trial of this case, and shall not be used for any other purpose

whatsoever or disclosed in any other case.

IT IS FURTHER ORDERED that the Plaintiffs' Motion to Modify is DENIED.

Dated April 3, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

13