IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-01280-WYD-BNB

JACK J. GRYNBERG,
GRYNBERG PRODUCTION CORPORATION and its successors, and
GRYNBERG PETROLEUM COMPANY and its successors,

Plaintiffs,

v.

TOTAL S.A.,

Defendant.

_____

**ORDER**
_____

This matter is before me on **Plaintiffs' Motion to Compel Responses to Plaintiffs'**

**Second Set of Requests for Production and Second Set of Interrogatories** [Doc. # 251, filed

11/28/05] (the "Motion to Compel").  The Motion to Compel is GRANTED IN PART and

DENIED IN PART.

The Motion to Compel seeks relief with respect to eight discovery requests: Requests for

Production Nos. 1, 2, 3, 4, 6, 7, and 8, and Interrogatory No. 2.  After the Motion to Compel was

filed, the defendant made a second supplemental response to the plaintiffs' second set of requests

for production.  As a result, the disputes concerning Production Requests Nos. 3, 4, and 6 have

been resolved.  *Plaintiffs' Reply Brief In Support of Their Motion to Compel Responses to*

*Plaintiffs' Second Set of Requests for Production and Second Set of Interrogatories* [Doc. # 277,

filed 1/13/06] (the *"Reply"*), at p.1.  The only matters now at issue concern Production Requests

Nos.1, 2, 7, and 8, and Interrogatory No. 2.

**Production Requests Nos. 1 and 2**

Production Request No. 1 seeks the following materials:

> Please produce complete and legible copies of all well logs and test results, open hole or cased hole, for every well drilled in the greater Kashagan area, including the areas known as Kashagan, Kairan, Aktota, Kalamkas and Kashagan Southwest, including, but not by limitation the wells known as the Kashagan East Well # 1 (KE-1), the Kashagan East Well # 2 (KE-2), the Kashagan West Well # 1 (KW-1), the Kalamkas Well # 1, the SW Kashagan Discovery Well, the Aktota Discover Well and the Kairan Discovery Well.

Motion to Compel, Exh.1 at p.5.

Production Request No. 2 seeks the following materials:

> Please produce complete and legible copies of every evaluation report by both outside and inside technical people including Ryder Scott Reports, and reports given to governmental entities in Kazakhstan as well as those Total and other consortium members prepared for its internal use, including evaluation reports prepared by other members of the consortium, regarding the exploration, development, production, marketing and/or pipelining of natural resources, including hydrocarbon oil, natural gas and sulfur, within the Kazakhstan portion of the offshore region of the northeast Caspian Sea.

Motion to Compel, Exh.1 at p.6.

Total objected to these requests asserting that they seek confidential, proprietary information that constitute trade secrets; that disclosure of the materials "would or may contravene Total's contractual confidentiality obligations owed to the Republic of Kazakhstan and to others"; and that I previously entered a protective order which encompasses the requested materials. Id. at pp.5-6.

The materials requested are relevant to the calculation of the amount of recoverable oil reserves which are the subject of the lawsuit. This, in turn, is relevant to the plaintiffs' damages

claims.

In <u>Centurion Industries, Inc. v. Warren Steurer and Associates</u>, 665 F.2d 323 (10th Cir.

1981), the Tenth Circuit Court of Appeals established the test to be applied in deciding whether to

require the disclosure of trade secrets:

> There is no absolute privilege for trade secrets and similar
> confidential information.  To resist discovery under Rule 26(c)(7), a
> person must first establish that the information sought is a trade
> secret and then demonstrate that its disclosure might be harmful.  If
> these requirements are met, the burden shifts to the party seeking
> discovery to establish that the disclosure of trade secrets is relevant
> and necessary to the action.  The district court must balance the
> need for the trade secrets against the claim of injury resulting from
> disclosure.  If proof of relevancy or need is not established,
> discovery should be denied.  On the other hand, if relevancy and
> need are shown, the trade secrets should be disclosed, unless they
> are privileged or the subpoenas are unreasonable, oppressive,
> annoying, or embarrassing.

<u>Id.</u> at pp.325-26 (internal quotations and citations omitted).

I am not persuaded by Total's argument that the well logs, test results, and evaluation

reports are immune from discovery because they are confidential.  First, Total's objections based

on confidentiality are carefully worded, stating only that disclosure of the well logs, test results,

and evaluation reports "would **or may** contravene" certain contractual confidentiality obligations.

Motion to Compel, Exh.1 at pp.5-6 (emphasis added).  There is no outright statement that the

responsive materials are subject to the confidentiality provisions.

In further support of their claim of confidentiality, Total relies on the declaration of

Martha J. Salper, which states in part:

> The PCA, Consortium Agreement, and PSA each contains
> provisions mandating that the parties preserve and maintain the
> confidentiality of commercial, financial, and technical documents

3

and information in connection with those agreements and with the North Caspian Sea exploration and development project.  Total and the other members of the North Caspian Sea Consortium are obligated to preserve the confidentiality of such information between and among themselves, and also with respect to the Government of the Republic of Kazakhstan and its state enterprises.

[The] seismic studies, well testing records, and other sensitive technical data regarding the North Caspian Sea area are highly confidential.  These materials are stored and maintained in Kazakhstan, as required by the Consortium Agreement and PSA. Such Contract Data is owned by the Republic of Kazakhstan.  Total and the other members of the North Caspian Sea Consortium do not own such materials but instead have only a right of access to and use of such technical information in connection with the North Caspian Sea exploration, development, and production program.

*Defendant's Response to Plaintiffs' Motion to Compel* [Doc. # 264, filed 12/19/05] (the

*"Response")*, Exh.D (the "Salper Decl.") at ¶¶14, 16.

Although the Salper Declaration indicates that "well testing records, and other sensitive technical data" are maintained only in Kazakhstan and that Total merely has a right of access, Total's responses to Production Requests Nos. 1 and 2 contain no objections based on burden and no argument that the well logs, test results, and evaluation reports are not in Total's possession, custody, or control for purposes of producing them.  If the requested materials are in the possession, custody, and control of Total so that they can be produced, then they cannot be the "highly confidential" well testing records and other sensitive technical data stored in Kazakhstan and to which Total has a right of access, as described in the Salper Declaration.

Regardless of these issues, the plaintiffs have directed me to a substantial body of authority, consistent with Centurion Industries, holding that documents are not immune from discovery merely because they are subject to contracts requiring that they be maintained

4

confidentially.  For example, in <u>DIRECTV, Inc. v. Puccinelli</u>, 224 F.R.D. 677, 684-85 (D. Kan. 2004), the court noted that "a general concern for protecting confidentiality does not equate to privilege.  Thus information and documents are not shielded from discovery merely because they are confidential."  <u>Accord</u> <u>Sonnino v. Univ. of Kansas Hospital Auth.</u>, 2004 WL 769325 *3 (D. Kan. April 8, 2004)(holding that "[p]arties cannot create a privilege against civil discovery by mere written agreement" and that "litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement").

Total has offered no authority to the contrary.  In addition, although Total argues that "[t]he technical data plaintiffs seek remains the property of a foreign sovereign, the Republic of Kazakhstan . . . , and therefore under principles of comity the Court should not issue an order requiring this information to be disclosed," *Response* at ¶7, it cites no supporting authority.

Finally, Total argues extensively that the information sought through Production Requests Nos. 1 and 2 already has been ordered protected by my previous Order [Doc. # 95, filed 9/10/04] (the "*9/04 Order*").  I disagree.

Before me in September 2004 was a much broader request, for "all technical data, including any seismic 'information' data or maps, 2D-Seismic analyses, seismic data integration analyses, production tests or economic analyses. . . ."  *9/04 Order* at p.5.  I granted a protective order concerning this sweeping request and ordered that the discovery not be had based on the totality of circumstances, including the enormous burden (the response would require production of more than a million documents, require 4,000 man-hours to accomplish, and cost $1 million); confidentiality concerns; and a failure by the plaintiffs to establish the relevancy of the requested

5

information.  Id. at p.7.  The requests now before me are substantially more narrow and Total

does not make a claim of undue burden in responding; the relevancy of the requested information

to the plaintiffs' claim for damages is plain; and I can address the confidentiality concerns, if any,

through the existing *Agreed Protective Order* [Doc. # 119, filed 10/25/04] and additional

limitations on the access to and use of the requested information.

Specifically with respect to the issue of burden, the Affidavit of Jack J. Grynberg

establishes that only 11 wells have been drilled in the Greater Kashagan Area.  Motion to Compel,

Exh.5 (the "Grynberg Aff.") at ¶5.  Total does not dispute the matter, nor does it make a specific

burden objection.  Consequently, it appears that production of the requested well logs and test

results is not overly burdensome.  In addition, Production Request No. 2 is limited to "evaluation

reports," and not to all of the data which may underlie a valuation analysis.  I assume that

evaluation reports are limited in number and, again, Total does not make a specific burden

objection.

In compelling Total to produce these materials to the plaintiffs, I am mindful of the fact

that the plaintiffs previously have failed properly to maintain the confidentiality of information.  In

particular, the plaintiffs disclosed to their expert, Daniel Johnson, certain information produced in

this case and subject to the *Agreed Protective Order*, and Mr. Johnson subsequently used that

information in connection with an expert report prepared in a different case--Grynberg v. Shell

Exploration, B.V., 03-cv-01212-LTB-PAC--in violation of the *Agreed Protective Order*.  See

Order [Doc. # 323, filed 4/3/06] at pp.6-7 and n.3.  In addition, Jack Grynberg apparently

obtained confidential information about the North Caspian Sea and improperly disclosed it to

others.  See *9/04 Order* at p.7.  Confidential information disclosed in this case and subject to the

*Agreed Protective Order* may be used "**solely** for the purpose of preparation and trial of **this**

**case**," and cannot be used for any other purpose whatsoever.  *Agreed Protective Order* at ¶3

(emphasis added).

As I understand their argument, the plaintiffs need the information sought through

Production Requests Nos. 1 and 2 to enable Jack Grynberg to prepare an expert opinion

concerning reservoir calculations for the greater Kashagan area.  Consequently, only

Mr. Grynberg needs to see the requested information, and I perceive no reason why he requires

copies of the information.

The Motion to Compel is GRANTED with respect to Production Requests Nos. 1 and 2.

Total shall make available for review by Jack Grynberg personally, but not by any other person,

the documents in its possession, custody, and control which are responsive to Production

Requests Nos. 1 and 2.  The plaintiffs may not make copies of the responsive information,

however, and the plaintiffs may not use or disclose the information for any purpose whatsoever

other than solely for the preparation and trial of this case.  The inspection shall be at a place, date,

and time as the parties may agree, but in no event later than **May 31, 2006**.

### Production Request No. 7

Production Request No. 7 states:

> Please produce complete and legible copies of the resume or
> curriculum vitae and the university or college transcripts of Total
> expert, Daniel J. Tearpock, including his transcripts from
> Bloomsburg University and Temple University.

Motion to Compel, Exh.1 at p.10.

7

Total responded:

> See resume and curriculum vitae of Daniel J. Tearpock previously produced.  Total does not have possession of other documents made the subject of this request, but Total has requested this information.

Id.  In a second supplemental response, Total stated that it "does not have possession of other documents made the subject of this request, but has requested this information."  *Response*, Exh. A at p.11.

Mr. Tearpock's transcript from Temple University has been produced.  *Reply* at ¶19.  No transcript concerning Mr. Tearpock has been received from Bloomsburg University, however.

Mr. Tearpock's course of study is relevant to his expertise.  Although the transcript may not be in Total's possession, custody, or control, it is within Mr. Tearpock's control insofar as he can obtain a copy upon request from the university, and Mr. Tearpock is an expert engaged by Total.  Consequently, I find that the transcript is in the indirect control of Total and should be produced.  The Motion to Compel is GRANTED to require the production of Mr. Tearpock's transcript from Bloomsburg University, provided that Mr. Tearpock reasonably can obtain a copy from the university by requesting it.  Any cost associated with obtaining the transcript must be paid by the plaintiffs.

**Production Request No. 8**

Production Request No. 8 seeks the following materials:

> You have produced the St. Lambert seminar documents for 1989 (Total # 4474-4611), 1992 (3142-3180), 1993 (3181-3232), 1994 (3233-3303) and 1995 (3304-3350). Please produce complete and legible copies of the St. Lambert seminar documents, or equivalent, for the years 1990 and 1991.

Motion to Compel, Exh.1. at p.11.

Total responded:

> After reasonable search and inquiry, Total has not yet located documents made the subject of this request, and it is noted that these documents, if they exist, would have been created 14 to 15 years ago. Total will supplement if these documents are found.

Id. In its second supplemental response, Total reiterated that "[a]fter diligent search efforts, Total has not located these documents." *Reply*, Exh.A at p.12.

The plaintiffs characterize Total's response is "incredible" and "inconceivable," Motion to Compel at ¶¶39 and 41, and seek the following relief:

> Remedial action is necessary to correct Total's resistence to producing these documents. Plaintiffs respectfully request an order permitting Plaintiffs to take a Fed. R. Civ. P. 30(b)(6) deposition of Total regarding these documents. The requested questioning would include tracking the efforts Total's record custodians and librarians made to locate the produced St. Lambert seminar documents, where the produced seminar documents were located or found, the librarians' efforts to locate the 1990 and 1991 seminar documents, the records of the attendees to the 1990 and 1991 St. Lambert seminar and the efforts to contact each attendee to determine whether he or she still has a copy of that year's seminar documents.

*Reply* at ¶25.

The plaintiffs have not produced any evidence that calls into question the truth of Total's response to Production Request No. 8.  Discovery is closed.  Nothing prevented the plaintiffs from pursuing this discovery during the discovery period.  No good cause has been shown to reopen discovery on this issue.  The Motion to Compel is DENIED insofar as it relates to Production Request No. 8.

### Interrogatory No. 2

Interrogatory No. 2 sought the following information:

> Identify each denial of a material allegation and each affirmative defense in your pleadings and for each:
>     (a) state all material facts upon which you base denial of affirmative defense;
>     (b) state the names, addresses, and telephone numbers of all material persons who have knowledge of those facts; and
>     (c) identify all material documents and other tangible things which support your denial or affirmative defense, and state the name, address and telephone numbers of the person who has each document.

Motion to Compel, Exh.2 at pp.5-6.

Total objected to the interrogatory, stating in part:

> Objection, this request improperly seeks to invade the attorney work product privilege because it asks Total or its counsel to reveal their opinions and mental impressions concerning the effect of certain pieces of evidence, and the request is overbroad and unduly burdensome because it improperly purports to ask Total and its counsel to marshal all evidence of particular facts.
>                           *   *   *
> This interrogatory is overbroad, and it constitutes an abuse of the discovery process, because it purports to ask Total to plead and prove its entire case, and to marshal all evidence, in response to one written interrogatory.

Id. at pp.6-7.

10

The plaintiffs argue that Interrogatory No. 2 is a contention interrogatory designed to "narrow and define the issues for trial, provide specification regarding the evidence which will be tendered in support of a given position and thereby enable the propounding party to determine the proof required to rebut the respondent's position." *Reply* at ¶27. A more broad interrogatory is difficult to imagine. I do not see how a response to Interrogatory No. 2 would narrow anything.

Interrogatory No. 2 is an impermissible "blockbuster" interrogatory of a nature repeatedly condemned by trial courts. I adopt the reasoning of the court in Hilt v. SFC, Inc., 170 F.R.D. 182 (D. Kan. 1997):

> Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case. . . . Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers to them would more likely cause delay and unreasonable expense of time, energy, and perhaps money.
>
> The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case. The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know. . . . This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery.

Id. at 186-87. Similarly, in Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 404 (D. Kan. 1998), the court held that "interrogatories should not require the answering party to provide a narrative account of its case."

It is proper, of course, to inquire about the material facts supporting specific factual matters raised in the pleadings. But to require Total first to identify each denial of a material allegation and each affirmative defense in its pleadings and then to state all material facts supporting the denial or affirmative defense, identify all witnesses with knowledge of those facts, and identify all material documents supporting the denial or affirmative defense is unduly burdensome as a matter of law and an abuse of the discovery system. Substitution of the word "material" for the words "each and every" does not save the interrogatory from being abusive. Compare Hilt, 170 F.R.D. at 186.

The Motion to Compel is DENIED with respect to Interrogatory No. 2.

## CONCLUSION

IT IS ORDERED that the Motion to Compel is GRANTED IN PART and DENIED IN PART as follows:

GRANTED to require Total to produce for review by Jack Grynberg personally, but not by any other person, the documents in its possession, custody, and control which are responsive to Production Requests Nos. 1 and 2. The plaintiffs may not make copies of the responsive materials, however, and the plaintiffs may not use or disclose the information for any purpose whatsoever other than solely for the preparation and trial of this case. The inspection shall be at a place, date, and time as the parties may agree, but in no event later than **May 31, 2006**;

GRANTED with respect to Production Request No. 7 to require Total to produce Mr. Tearpock's transcript from Bloomsburg University, provided that Mr. Tearpock reasonably can obtain a copy of the transcript from the university and provided further that any costs

associated with obtaining the transcript are paid by the plaintiffs.  The transcript shall be produced

to the plaintiffs on or before **May 31, 2006**; and

DENIED in all other respects.

Dated May 3, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge