IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  03-D-1280 (BNB)

JACK J. GRYNBERG,
GRYNBERG PRODUCTION CORPORATION, and its successors, and
GRYNBERG PETROLEUM COMPANY, and its successors,

      Plaintiffs,

v.

TOTAL COMPAGNIE FRANCAISE DES PETROLES,
TOTAL FINA ELF S.A., and
TOTAL S.A.,

      Defendants.
_____

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**
_____

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on several pending motions including three

motions for summary judgment filed on September 16, 2005, by Defendants Total

Compagnie Francaise Des Patroles, Total Fina Elf S.A., and Total S.A. (hereinafter

referred to as "Total") (docket #'s 200/204, 201, and 202); a cross-motion for summary

judgment filed by Plaintiffs Jack J. Gyrnberg, Grynberg Production Corporation, and

Grynberg Petroleum Company (hereinafter referred to as "Grynberg" or "Plaintiffs") on

December 20, 2005 (docket #266); and Grynberg's Fed. R. Civ. P. 72(a) Objections to

and Appeal of Magistrate Judge Boland's April 3, 2006, Order, filed April 18, 2006

(docket #324).  A hearing concerning these motions was held on May 12, 2006.

In this case, Grynberg, through the First Amended Complaint, brings claims

against Total for unjust enrichment and breach of fiduciary duty based on allegations that Total appropriated the value of its work and confidential information leading to the largest oil, natural gas, and sulphur discovery in the world in over 40 years (in the Northeastern Caspian Sea, offshore Kazakhstan), and then refused to pay Grynberg fair compensation for the value of the confidential information, work and contacts that led to this discovery. *See* First Am. Comp. ¶¶ 3, 43-44. Grynberg alleges that as a direct result of wrongly appropriating Grynberg's effort, confidential information and knowledge, Total has acquired an oil and natural gas interest in Kazakhstan having a fair market value of over ten (10) billion dollars. *See* First Am. Comp. ¶¶ 3, 9.

Total has filed three motions for summary judgment including a second motion for summary judgment based on applicable statutes of limitation and laches, as well as a motion for summary judgment on Grynberg's breach of fiduciary duty claim, and a motion for summary judgment as to all claims asserted by Jack J. Grynberg and Grynberg Petroleum Company. Grynberg has filed a cross-motion seeking to strike Total's defense of laches and limitations. Grynberg has also filed a Rule 72(a) Objection to Magistrate Judge Boland's Order of April 3, 2006. For the reasons stated on the record at the hearing and in this Order, Plaintiff's Objection is **OVERRULED**; Total's second motion for summary judgment based on applicable statutes of limitation and laches is **GRANTED**; and Plaintiff's cross-motion for summary judgment is **DENIED**.

II.   ANALYSIS

  A.   Plaintiff's Fed. R. Civ. P. 72(a) Objections to and Appeal of Magistrate
       Judge Boland's April 3, 2006 Order

As an initial matter, I address Plaintiff's Objection to an Order entered by

Magistrate Judge Boyd N. Boland on April 3, 2006 ("Order").  The Order resolves

issues raised in Total's Motion for Protective Order, filed January 13, 2006 (docket

#278) ("Motion for Protective Order"), and Plaintiffs' Amended Motion to Modify

Protective Order, filed March 2, 2006 (docket #307) ("Motion to Modify").

By way of background, I note that on October 25, 2004, Magistrate Judge

Boland entered an Agreed Protective Order (the "Protective Order"), which allows free

discovery of information between the parties for the preparation and trial of this case

while restricting the general dissemination of the information exchanged in discovery

which the parties deem to be confidential.  The Protective Order applies "to all

documents, materials, and information, including without limitation, documents

produced, answers to interrogatories, responses to requests for admission, deposition

testimony, and other information disclosed pursuant to the disclosure or discovery

duties created by the Federal Rules of Civil Procedure."  Protective Order at ¶1.  The

Protective Order allows parties to designate materials as containing "Confidential

Information."  The Protective Order provides:

> All Confidential Information produced or exchanged in the
> course of this lawsuit *shall be used solely for the purpose of
> preparation and trial of this case*, and shall not be used for any
> business, commercial, competitive, or any other purposes
> whatsoever, and shall not be disclosed to any person except
> in accordance with the terms hereof.

*Id.* at ¶3 (emphasis added).  Confidential Information may be disclosed only to a limited and carefully defined group of "Qualified Persons," all of whom play some role in this litigation.  *Id.* at ¶6.

In their Motion for Protective Order, Total sought an Order restricting Grynberg's use of the information contained in approximately 245 documents and certain deposition testimony (the "Challenged Materials") outside of this lawsuit.  Grynberg objected to the request claiming that the Challenged Materials do not contain trade secrets and should not be subject to the limitations on disclosure established in the Protective Order.  Grynberg is involved in a related litigation against Shell Exploration, B.V., pending in front of Chief Judge Babcock, which apparently also involves the Kazakhstan oil fields and another member of the North Caspian Sea Consortium.  In its Motion to Modify Grynberg seeks an order modifying the Protective Order to allow "use of certain 'confidential' documents produced in this case in the related *Shell* litigation." Pls.' Motion to Modify at ¶1.

In his Order, Magistrate Judge Boland stated, "This is not a discovery dispute. To the contrary, Total has produced all of the Challenged Materials to the Grynberg plaintiffs, and the Grynberg plaintiffs are free to use those materials in this litigation, subject to the limitations of relevancy, authenticity, and the like.  The issue here is the ability of the Grynberg plaintiffs to disseminate the Challenged Materials, obtained through discovery here under the protections of the Agreed Protective Order, to the public or in other, collateral litigation."  Order at 8.

Magistrate Judge Boland further stated, "I am persuaded that the documents and

other materials at issue here include Total's internal memoranda, employee notes, private business correspondence, and draft contracts related to its business dealings in Kazakhstan.  They contain sensitive commercial information about a particularly complex international business relationship which involves numerous international corporations and a foreign sovereign.  The potential value of the transaction is enormous, and the risk of harm to Total from possible improper disclosure of the sensitive information is equally enormous."  Order at 10.

Since Grynberg filed timely Objections to the Order on April 18, 2006, I must review Magistrate Judge Boland's Order to determine whether it is "clearly erroneous or contrary to law" since the nature of the matter is nondispositive.  FED. R. CIV. P. 72(a). "An order is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made."  *Cook v. Rockwell Int'l Corp.*, 147 F.R.D. 237, 242 (D. Colo. 1993).

After careful review, I find that Judge Boland's Order is not clearly erroneous or contrary to law.  As Judge Boland ultimately determined, "The better approach, particularly in view of the sensitivity of the disputed materials and enormous potential for harm to Total which could result from misuse of Total's confidential materials, is to require the Grynberg plaintiffs to seek by subpoena in the Shell litigation any materials they believe may be relevant there. Total, Shell, and any other interested party would then be in a position to assert their positions with full knowledge of the context of the dispute."  Order at 12.  I note that at the May 12, 2006 hearing the parties indicated that Grynberg recently sought the Challenged Materials from Total through a subpoena

issued in the Shell litigation.  In addition, I note that counsel for Total affirmed during

the May 12, 2006 hearing that they would not challenge the subpoena on the basis that

it was not validly served.  In light of the foregoing, Grynberg's Objection is

**OVERRULED**.

        B.     <u>Defendant's Second Motion for Summary Judgment Based on Limitations and Laches</u>

             1.     <u>Introduction</u>

I now turn to Total's second motion for summary judgment based on limitations

and laches.  Total filed its first motion for summary judgment based on statute of

limitations on January 16, 2004.  Grynberg then filed a cross-motion for summary

judgment on the issue of statutory tolling of the statute of limitations pursuant to Colo.

Rev. Stat. § 13-1-125.  In its first motion for summary judgment, Total argued that

pleadings filed in a 1993 case brought by BP Exploration Operating Company ("BPX")

against Grynberg (the "BPX Litigation"), along with an Answer and Counterclaims filed

by Grynberg Production Company in June 1994, show conclusively that Grynberg was

aware as early as 1993 of the relevant facts giving rise to the claims at issue, that

Grynberg unreasonably delayed bringing this suit, and that Total was prejudiced by this

delay.

The essence of Grynberg's claims for breach of fiduciary duty and unjust

enrichment is undisputed.  Grynberg alleges that in July of 1990 Grynberg provided

representatives of Total "confidential geologic, seismic, and scientific data confirming

enormous oil and natural gas deposits in an Area of Mutual Interest (AMI) offshore

Kazakhstan under the Caspian sea." Affidavit of Jack J. Grynberg, December 22, 2003 at ¶ 2; *see also* First. Am. Comp.  It was Grynberg's intent to use his personal, professional and governmental contacts within the Kazakh government to negotiate a contract with the Republic of Kazakhstan and other Western oil companies "for production of oil, natural gas, and other minerals from the AMI."  Affidavit of Jack J. Grynberg, December 22, 2003 at ¶ 3; *see also* First Am. Comp. ¶ 5; Letter of July 17, 1990, from Grynberg to Total.  Grynberg alleges that "[t]he information supplied to Total by Grynberg, and to other parties to the organization of western oil companies initiated by Grynberg at the behest of the government of Kazakhstan, was specifically provided on condition that Grynberg retained [sic] a fair share of the entire deal."  First Am. Comp. ¶ 9.  The terms of Grynberg's alleged agreement with Total are set forth in a July 17, 1990 Letter from Grynberg to Total ("July 17 Letter").  The AMI referenced in the July 17 Letter describes an area in the Northeastern Caspian Sea including Kashagan and Kalamakas "B" discoveries, as well as Kairan, Aktote, and other prospects.  First Am. Comp. ¶ 5.

According to Grynberg, the terms of this agreement were breached when "several huge oil companies, including Total, by their exploration efforts based upon Grynberg's confidential information, were able to determine the value and extent of some of the Kazakhstan oil deposits in the AMI" and "later went around Grynberg to Kazakhstan officials directly, cutting Grynberg out of the entire deal . . . then denied Grynberg any compensation whatsoever for his valuable contribution to their assets and profits."  First Am. Comp. ¶ 7.  The "deal" to which Grynberg refers is the

-7-

Production Sharing Agreement executing on November 18, 1997 ("PSA"), which is attached to the First Amended Complaint as Exhibit 3.  First. Am. Comp. ¶ 9.  The PSA contains a map of the contract area, and a description of the precise coordinates of the various "blocks" within the contract area which were allocated among the parties to the PSA.  *See* PSA at pgs. 167, 214-16.

At the same time Grynberg was sharing confidential information and entering the alleged agreement with Total, it was entering a similar agreement with BPX. Grynberg's agreement with BPX was the subject of the 1993 BPX Litigation.  The pleadings filed in the BPX Litigation discuss the formation of a North Caspian Sea Consortium, which included several Western energy companies including British Petroleum and a subsidiary of Total, but not Grynberg.  According to pleadings in the BPX Litigation, the parties to the North Caspian Sea Consortium signed a Preliminary Consortium Agreement in 1993 that involved an exploration research study of the hydrocarbon potential of the Kazakhstan sector of the North Caspian Sea, and later executed a Consortium Agreement that created a consortium to pursue rights to hydrocarbon exploration in the North Caspian Sea area of Kazakhstan.  The parties to the Consortium Agreement later entered the November 18, 1997 PSA, which, as alleged in Grynberg's First Amended Complaint, memorialized the parties actual production rights in Kazakhstan.

By Order dated January 24, 2005, I denied the earlier series of motions finding that Grynberg's claims were not tolled, and that genuine issues of material fact existed with respect to when Grynberg discovered the facts giving rise to its claims.  I found

that while the BPX pleadings put Grynberg on notice that Total was involved in an exploration research study of the hydrocarbon potential of the Kazakhstan sector of the Caspian Sea, and that Total and BP later executed a Consortium Agreement that created a consortium to pursue rights to hydrocarbon exploration, these facts did "not translate to a finding that Total actually obtained production rights to take oil and natural gas from the [AMI] at issue in this lawsuit or that Total improperly used confidential information provided by [Grynberg] in obtaining such rights, as alleged in this case." *See* January 24, 2005 Order.  I also noted that the PSA, which memorialized Total's production rights in the area of Kazakhstan at issue was not disclosed in the 1993 litigation, was not executed until November 18, 1997, and that Grynberg asserts that it did not see the PSA until January 2002.  *See* January 24, 2005 Order.

2.   Analysis

As discussed in my January 24, 2005 Order, "A cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Winkler v. Rocky Mountain Conference of the United Methodist Church*, 923 P.2d 152, 158 (Colo. App. 1995) (citing COLO. REV. STAT. § 13-80-108(1)), *cert. denied*, 519 U.S. 1093 (1997).  "The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the . . . conduct [at issue] is normally a question of fact which must be resolved by the trier of fact, in this case a jury." *Winkler*, 923 P.2d at 158-59.  "However, if the undisputed facts clearly show that a plaintiff discovered, or reasonably should have discovered, the

. . . conduct as of a particular date, the issue may be decided as a matter of law." *Id.*

An action for breach of fiduciary duty must be filed within three (3) years after the cause of action accrues. *Colburn v. Kopit*, 59 P.3d 295, 296 (Colo. App. 2000) (citing COLO. REV. STAT. § 13-80-101(1)(f))), *cert. denied* (Dec. 2, 2002). Plaintiffs' unjust enrichment claim is also subject to a three-year statute of limitations. *Luttgen v. Fischer*, 107 P.3d 1152, 1157 (Colo. App. 2005) (citing COLO. REV. STAT. § 13-80-101(1)(a)). "For purposes of the statute of limitations, a cause of action for breach of fiduciary duty . . . accrues on the date the 'claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another.'" *Colburn*, 59 P.3d at 296-97 (quotation omitted). "This standard is objective." *Id.* at 297. "'The focus is on a plaintiff's knowledge of facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of [the defendant].'" *Id.* (quotation omitted). "The plaintiff need only know or have reason to know the facts that underlie or are essential to the cause of action, but need not know the precise legal theory upon which the action may be brought." *Id.* To the extent the unjust enrichment claim is subject to a laches defense, I note that laches, like the statute of limitations, requires full knowledge of the facts and their significance. *See Keller Cattle Co. v. Allison*, 55 P.3d 257, 260-61 (Colo. Ct. App. 2002).

Turning to Total's second motion for summary judgment, Total asserts that new evidence obtained subsequent to the filing of its previous summary judgment motion "definitively establishes" that no later than January 19, 1999, Plaintiffs knew or should

have known of the facts giving rise to their claims.  Specifically, Total asserts that

Grynberg knew: "(1) that Total was a party to the [Production Sharing Agreement in

Respect of the North Caspian Sea ("PSA")] giving it exploration and production rights in

the Kazakh sector of the North Caspian Sea, (2) that the area subject to the PSA was

within the [Area of Mutual Interest ("AMI")] defined by the AMI Proposal with respect to

which Grynberg had allegedly supplied Total with confidential data, and (3) that Total

was operating in that area to the exclusion of Plaintiffs and without offering

compensation to Plaintiffs for any information they allegedly provided to Total in 1990."

*See* Defendant's Second Motion for Summary Judgment Based on Limitations and

Laches, pg. 7.

Total relies on several pieces of new evidence in support of its second motion.

First, Total notes that the Settlement Agreement between BPX and Grynberg, executed

January 19, 1999 by Plaintiff Jack J. Grynberg as President of Grynberg Production

Corporation, specifically refers to the 1997 PSA and defines the agreement as follows:

> "PSC" means the Production Sharing Agreement in Respect
> of the North Caspian Sea, dated as of November 18, 1997,
> To Engage in Exploration and Production in the Contract
> Area (as Described in Schedule VII), in Accordance with
> License Series SCI No. 1016 (Oil) among . . . BG
> Exploration and Production Limited . . . Total Exploration
> Production Kazakhstan, . . . .

This reference to the 1997 PSA in the 1999 Settlement Agreement is significant.  In his

December 22, 2003, Affidavit, submitted in connection with Plaintiffs' Response to

Total's December 24, 2003, Motion to Dismiss Fraud, Conversion, and Breach of

Contract Claims, Plaintiff Jack J. Grynberg states that "[i]n approximately October of

2001, I first learned that a Production Sharing Agreement involving Total and Kazakhstan . . . could be purchased . . . . " Grynberg Affidavit at ¶ 4.  Plaintiff Jack J. Grynberg further states that the PSA "had been previously held secret by the parties, including Total, and was not published until 2000," and that "[u]pon review of the PSA in January of 2002, for the first time I became aware of Total's actual participation in the PSA with Kazakhstan."  As noted above, my January 24, 2005, Order is based on the fact that the PSA was not disclosed in the 1993 litigation, as well as the statement in Plaintiff Jack J. Grynberg's Affidavit that he was not aware of Total's participation in the PSA until January of 2002.  However, the reference to the 1997 PSC in BPX Settlement Agreement indicates that, at a minimum, Grynberg should have known of Total's participation in the PSA upon execution of the Settlement Agreement in January of 1999.

Grynberg admits that he executed the BPX Settlement Agreement, but asserts, as he did in response to Total's first motion for summary judgment, that he was not aware of the nature, extent and cause of its injuries after it <u>reviewed</u> the PSA in 2002, and that the reference to the PSA in the BPX Settlement Agreement only provides "inquiry notice" and raised "suspicions" of a production sharing agreement in the North Caspian between Total and other oil companies and the Republic of Kazakhstan.  I now disagree with Grynberg's assertions.  It is undisputed that at the time the BPX Settlement Agreement was executed, Grynberg was aware that Total was a party to the PSA and that Total had exploration and production rights in the North Caspian Sea.  As set forth in the First Amended Complaint, Total's participation in the 1997 PSA, to the

exclusion of Grynberg, is at the crux of Grynberg's claims in this case.

At the May 12, 2006, hearing on Total's second motion for summary judgment, I asked Grynberg's counsel to articulate what specific information was gained by Grynberg when he was finally able to review the PSA in 2002 that was not available at the time the BPX Settlement Agreement was executed.  Grynberg's counsel responded that until reviewing the PSA, Grynberg was not aware of the location of Total's production rights, or how Total acquired those rights.  Grynberg's counsel further argued that the BPX Settlement Agreement does not identify the precise blocks which are subject to the PSA, and that when Grynberg saw the PSA, "it showed him where the blocks were."

As to Grynberg's knowledge of the location of Total's production rights, Total notes that the AMI discussed in Grynberg's July 17 Letter covers the entire Kazakh sector of the North Caspian Sea and, therefore, the area referenced in the PSA as the "North Caspian Sea," necessarily falls within the area covered in the AMI.  While the AMI identified in the July 17 Letter covers a large area, it is also undisputed that by April 11, 1996, Grynberg knew that Total was a member of the North Caspian Sea consortium, and by 1999 was aware that the North Caspian Sea Consortium was drilling a well in the Kashagan structure, which is the specific area Grynberg alleges to have identified to Total in 1990.  *See* April 11, 1996, Letter of Plaintiff Jack J. Grynberg; August 20, 2005, deposition of Plaintiff Jack J. Grynberg Tr. 283:21 - 284:17; First Am. Comp. ¶¶ 3, 5, 7-8, 33-37.  Moreover, in a second Affidavit by Plaintiff Jack J. Grynberg dated July 7, 2003, made in connection with an action Plaintiff Jack J. Grynberg

-13-

initiated against BPX alleging that BPX fraudulently induced him into executing the BPX

Settlement Agreement, Plaintiff Jack J. Grynberg states "[i]n this Affidavit, I will show

that during the two-and-a-half years in which the parties negotiated the Settlement

Agreements, BPX officials repeatedly stated that BPX intended to explore, develop and

produce the Kashagan Field in the Offshore Caspian Sea - a field we understood to be

the largest oil and gas find in the world in the past 30 years."  In addition, an affidavit

executed on July 1, 2003 by Morris I. Ettinger, an employee of Grynberg Petroleum

Company, which was also made in connection with the second BPX case, states that

during 1997 and 1998 a number of meetings were held between Grynberg and BPX in

an attempt to settle the dispute between them "with regard to rights and benefits related

to exploration and production of hydrocarbons (oil and gas) in the Capsian Sea area

offshore Kazakhstan," and that in each of those meetings a representative of BPX

"gave us reports on the activities which were performed and the plans for future work.

He provided us with a map showing the blocks in the Caspian Sea which were

assigned to the various companies."

Based on these undisputed facts, I find that by 1999 Grynberg was aware not

only that there was an expansive development taking place in the area of the North

Caspian Sea that Grynberg viewed as valuable, but also the location in which BPX and

other parties to the North Caspian Sea consortium were operating.  Moreover, upon

execution of the BPX Settlement Agreement Grynberg knew or should have known that

Total and the other members of the North Caspian Sea consortium had obtained actual

production rights in this area.   Even assuming that Grynberg did not see a copy of the

PSA until January 2002, he was on notice much earlier that Total had entered into a production sharing agreement in the North Caspian Sea, to the exclusion of Grynberg, in the area that Grynberg alleges it identified to representatives of Total as containing enormous oil and natural gas deposits.  I do not find credible Grynberg's assertion that his claims against Total did not accrue until saw the precise "blocks" described in the PSA.  The fact that Grynberg knew or should have known by January 19, 1999, that Total had obtained actual production rights in the AMI identified in the July 17 Letter, to the exclusion of Grynberg, is enough to trigger the statute of limitations as to Grynberg's claims for breach of fiduciary duty and unjust enrichment in this case.  *See Chasteen v. Unisia Jecs Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000) (a plaintiff need not "conclusively" know of the injury and its cause before a statute of limitations is triggered.").  Moreover, during the May 12, 2006, hearing, Grynberg admitted that the PSA does not identify which party was operating in which block and that this information was not obtained until the parties conducted discovery.  Therefore, the current record before me shows that Grynberg and his company had all the information necessary to bring their claims by January 19, 1999.

In its cross-motion for summary judgment Grynberg seeks to strike Total's defense based on laches and statute of limitations.  In this cross-motion Grynberg asserts for the first time that his claims did not arise until sometime in June 2002, when the Kashagan field was declared commercial.  Pls.' Cross-Motion at 4.  I reject this argument.  First, the argument is not consistent with Grynberg's response to Total's first or second motions for summary judgment, in which Grynberg asserts that his claims

-15-

accrued when he first saw the PSA in 2002.  As discussed above both the breach of

fiduciary duty claim and the unjust enrichment claim are subject to a three year statute

of limitations.  Moreover, "a cause of action for breach of fiduciary duty . . . accrues on

the date the 'claimant has knowledge of facts which would put a reasonable person on

notice of the nature and extent of an injury and that the injury was caused by the

wrongful conduct of another.'"  *Colburn v. Kopit*, 59 P.3d 295, 296-7 (Colo. App. 2000)

(quotation omitted).  Second, there is no requirement that a plaintiff know the extent of

his or her damages before a claim begins to accrue.  *See Dove v. Delgado*, 808 P.2d

1270, 1273-74 (Colo. 1991).  Grynberg's alleged injuries in this case stem from Total's

participation in the PSA, and are not tied to the profitability of the Kashagan Field.  At

the May 12, 2006, hearing Grynberg's counsel argued that Total's breach of fiduciary

duty occurred "almost immediately after the July 1990 meeting [between Total and

Grynberg], and continued throughout, culminating in the June 9, 1993 signing of the

preliminary consortium agreement.  Total's rights, which were vested by the November

1997 production sharing agreement were the fruits of that initial consortium agreement.

. . . [Total] would not have been in that PSA but for the June 9, 1993 . . . preliminary

consortium agreement."  These statements further buttress my conclusion that, as a

matter of law, Grynberg's claims in this case accrued, at the latest, upon execution of

the BPX Settlement Agreement on January 19, 1999.  Plaintiffs initiated this action on

July 17, 2003.  Therefore, Plaintiff's claims in this case for breach of fiduciary and

unjust enrichment are barred by the three-year statute of limitation and Total is entitled

to summary judgment in its favor as to these claims.

Based on the foregoing analysis, Grynberg's cross-motion for summary judgment seeking to strike Total's defense based on laches and statute of limitations is denied.  Because I conclude that Plaintiffs' claims in this case are barred by the statute of limitations, I need not address the arguments raised in Total's motion for summary judgment on breach of fiduciary claim, or Total's motion for summary judgment against Jack J. Grynberg and Grynberg Petroleum Company.

III.    CONCLUSION

In conclusion, for the reasons stated above, it is

ORDERED that Defendant's Second Motion for Summary Judgment Based on Limitations and Laches, filed September 16, 2005 (docket #200) is **GRANTED**.  The claims and causes of action asserted against Total are hereby **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment on Breach of Fiduciary Duty Claim, filed September 16, 2005 (docket #201) is **DENIED AS MOOT.**  It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment Against , filed September 16, 2005 (docket #202) is **DENIED AS MOOT.**  It is

FURTHER ORDERED that Plaintiffs' Cross-Motion for Summary Judgment to Strike Defendant's Defenses of Laches and Limitations with Authority, filed December 20, 2005 (docket #266), is **DENIED**. It is

FURTHER ORDERED that Grynberg's Fed. R. Civ. P. 72(a) Objections to and Appeal of Magistrate Judge Boland's April 3, 2006, Order, filed April 18, 2006 (docket

#324), is **DENIED**.

Dated:  May 31, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge